B. CLYDE HUTCHINSON, State Bar No. 037526
bch@llcllp.com
VINCENT CASTILLO, State Bar No. 209298
vcastillo@llcllp.com
JASON B. SHANE, State Bar No. 253908
jshane@llcllp.com
LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541
Telephone:   (510) 433-2600
Facsimile:    (510) 433-2699

Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION (erroneously sued herein as
AMTRAK CALIFORNIA), BNSF RAILWAY
COMPANY (erroneously sued herein as
BURLINGTON NORTHERN SANTA FE
RAILWAY), and STATE OF CALIFORNIA,
DEPARTMENT OF TRANSPORTATION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| LUCIO CORRAL RODRIGUEZ, individually and as Successor in Interest to the decedents, MARICRUZ CORRAL, IVAN ALEXANDER CORRAL, and LUCIO ANTHONY CORRAL,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS; CITY OF MODESTO; CITY OF RIVERBANK; STATE OF CALIFORNIA; AMTRAK CALIFORNIA; BURLINGTON NORTHERN SANTA FE RAILWAY; and DOES 1 to 200,<br><br>Defendants.<br><br>AND ALL RELATED ACTIONS. | Case No.  1:08-cv-00856 OWW GSA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS NATIONAL RAILROAD PASSENGER CORPORATION'S, BNSF RAILWAY COMPANY'S, AND STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION'S MOTION FOR PROTECTIVE ORDER LIMITING THE NUMBER OF PLAINTIFF LUCIO CORRAL RODRIGUEZ' DISCLOSED EXPERTS AND TO EXTEND THE DEADLINE FOR EXPERT DISCOVERY** |

/ / /

/ / /

## I. INTRODUCTION

Plaintiff Lucio Corral Rodriguez ("Plaintiff") served his Designation of Expert Trial Witnesses, disclosing eleven (11) expert witnesses residing in nine (9) different states, many of which intend to testify regarding overlapping subjects. Pursuant to Federal Rules of Civil Procedure, rule 16(c)(2)(D), Defendants NATIONAL RAILROAD PASSENGER CORPORATION ("Amtrak"), BNSF RAILWAY COMPANY ("BNSF"), and STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION ("Caltrans") (collectively "Defendants") move for a protective order limiting the number of Plaintiff's disclosed experts and to extend the deadline for expert discovery, on the basis that the testimony of certain experts designated by Plaintiff are duplicative and cumulative. Furthermore, requiring Defendants to depose each expert would submit Defendants to undue burden and expense.

## II. FACTUAL BACKGROUND

On June 1, 2010, Plaintiff served his Designation of Expert Trial Witnesses, in which he disclosed eleven (11) retained expert witnesses residing in nine (9) different states. *See* Plaintiff's Designation of Expert Trial Witnesses, attached as Exhibit A to the Declaration of Vincent Castillo ("Castillo Declaration") at p. 2, ¶ 2. Amongst Plaintiffs retained experts are three railroad operations experts, two accident reconstructionists, three traffic engineering experts, and two human factors experts.

### A. Railroad Operations

1. Richard Beall was retained as an expert "in the areas of railroad operations and safety issues." *See* Expert Report Of Richard C. Beall ("Beall Report") at p. 2, attached as Exhibit B to the Castillo Declaration at p. 2, ¶ 3. Mr. Beall states opinions regarding the Amtrak engineer's operation of the subject train, including his operation of the train's throttle, braking system and horn, Amtrak's training of the engineer and instructions to its employees regarding the subject crossing, and BNSF's construction of the subject crossing. *See* Beall Report at pp. 9-11. Mr. Beall also opines specifically about the Amtrak engineer's compliance with train operating rules. *See* Beall Report at pp. 11-12.

///

13249-36853 JBS 585721.1                                2                              Case No. 1:08-cv-00856 OWW GSA

**MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER LIMITING THE NUMBER OF PLAINTIFF'S DISCLOSED EXPERTS AND TO EXTEND THE DEADLINE FOR EXPERT DISCOVERY**

2.      Similarly, Charles L. Culver was retained as an expert in the field of "railroad operations and rules compliance." *See* Charles L. Culver & Associates, LLP's Preliminary Report ("Culver Report") at p. 1, attached as Exhibit C to the Castillo Declaration at p. 2, ¶ 4. Mr. Culver states opinions concerning the Amtrak engineer's operation of the subject train, including his operation of the train's throttle, braking system and compliance with train operating rules, and Amtrak's training of its engineer. *See* Culver Report at p. 6-13. Mr. Culver also performed an analysis of the data taken from the locomotive's event data recorder. *See* Culver Report at pp. 4-13

3.      Likewise, James R. Loumiet was retained to perform and states opinions concerning his "analysis of the locomotive event recorder data, . . . analysis of the train braking and stopping distances, and . . . analysis of the ability of Amtrak and [its engineer] to avoid the collision," amongst other areas. *See* Expert Report of James R. Loumiet ("Loumiet Report") at p. 2, attached as Exhibit D to the Castillo Declaration at p. 2, ¶ 5.

**B.     Accident Reconstruction**

1.      Robert L. Anderson, P.E. was retained as an accident reconstructionist. *See* Robert L. Anderson, P.E.'s Report ("Anderson Report") at p. 1, attached as Exhibit E to the Castillo Declaration at p. 2, ¶ 6. Mr. Anderson states his opinion that the accident was caused the train's speed because, if it had been traveling at a slower speed, Ms. Corral could have cleared the tracks in time to avoid the accident. *See* Anderson Report at pp. 3-4.

2.      In addition to being retained on the topic of train operations, James R. Loumiet was also retained as an accident reconstructionist. *See* Loumiet Report at p. 2. While his opinions pertain primarily to train operations, as discussed above, they do relate to accident reconstruction, including analyses of the subject train's speed, stopping distance, and the cause of the accident.

**C.     Traffic Engineering**

1.      Fred R. Hanscom, P.E. was retained as an expert in the fields of traffic engineering and human factors. *See* Fred R. Hanscom, P.E.'s Report ("Hanscom Report") at p. 1, attached as Exhibit F the Castillo Declaration at p. 2, ¶ 7. With respect to traffic engineering, Mr. Hanscom

states opinons regarding the makeup of the intersection of Claribel Road and Terminal Avenue, the signage at that intersection, the pavement markings at that intersection and crossing, and the "clear storage distance" (the distance between the intersection stop line and the nearest rail at the crossing).  *See* Hanscom Report at pp. 3-5.

2. Harry J. Krueper, Jr., P.E. was retained to "analyze and comment on the method of traffic control that was implemented by the County of Stanislaus at the subject railroad crossing, and to evaluate the extent to which the [County] and [BNSF] considered accepted safety procedures in the implementation of the traffic control plan."  *See* Krueper Engineering & Associates, Inc.'s Summary of Evaluation Regarding Train-Versus Automobile Collision ("Krueper Report") at p. 3, attached as Exhibit G to the Castillo Declaration at p. 2, ¶ 8.  Despite the nature of his retention, Mr. Krueper states opinions concerning the makeup of the intersection of Claribel Road and Terminal Avenue, the signage at that intersection and the crossing, the pavement markings at that intersection and the railroad crossing, and the "clear storage distance."  *See* Krueper Report at pp. 10-17.

3. Edward M. Stevens, P.E. was retained to prepare an engineering analysis "as it relates to the design, operations and maintenance" of the subject railroad crossing and to determine "whether or not the highway/railway intersection at Claribel Road and the BNSF railway [sic] was reasonably safe . . . ."  *See* Edward Stevens & Associates Engineers, Inc.'s Engineering Report ("Stevens Report") at pp. 1 & 5, attached as Exhibit H to the Castillo Declaration at p. 2, ¶ 9.  Like Mr. Krueper, Mr. Stevens states opinions concerning the makeup of the intersection of Claribel Road and Terminal Avenue, the signage at that intersection and the crossing, the pavement markings at that intersection and the railroad crossing, and the "clear storage distance."  *See* Stevens Report at pp. 5-6 & 10-11.

**D. Human Factors**

1. Ellie Francis, Ph.D., O.D. was retained to report on the "visual and human factors issues that contributed to" the subject accident.  *See* Report of Ellie L. Francis, Ph.D., O.D. ("Francis Report") at p. 2, attached as Exhibit I to the Castillo Declaration at p. 3, ¶ 10. Dr. Francis states opinions regarding Ms. Corral's ability to perceive the approaching train prior

LOMBARDI, LOPER & CO NANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612 -3541

to the accident, as well as, inexplicably, the need for a great "cold storage distance" and improved pavement markings, and the Amtrak engineer's operation of the train.

2. As stated above, Fred R. Hanscom, P.E. was retained as both an traffic engineering and human factors expert. *See* Hanscom Report at p. 1. With respect to human factors, Mr. Hanscom opines on the subjects of automobile drivers' perception of signs at the crossing and intersection, the Amtrak engineer's operation of the train, factors affecting the engineer's decisions and behavior, factors affecting Ms. Corral's decisions and behavior – including visual factors affecting her ability to perceive the oncoming train. *See* Hanscom Report at pp. 5-9.

Because the testimony of Plaintiff's disclosed experts in each field – (a) railroad operations, (b) accident reconstruction, (c) traffic engineering, and (d) human factors – will be duplicative and cumulative of the testimony of Plaintiff's other disclosed experts in that particular field, Defendants request that the Court issue an order limiting the number of Plaintiff's disclosed experts to one for each discrete specialty. Moreover, due to the vast geographical expanse across which Plaintiff's disclosed experts are located, as well as the sheer number of these experts, Defendants request that the Court issue an order extending the discovery cut-off, presently set for July 15, 2010.[1]

### III. PLAINTIFF'S DISCLOSED EXPERTS SHOULD BE LIMITED TO ONE FOR EACH DISTINCT SPECIALTY

Trial courts have the inherent power, "in the exercise of a sound and reasonable judicial discretion, to limit the number of expert witnesses" testifying as to a single issue. *Ruud v. United States*, 256 F.2d 460, 462, fn. 5 (9th Cir. 1958); *Riley v. Dow Chemical Co.*, 123 F.R.D. 639, 640 (N.D. Cal. 1989). Moreover, Federal Rules of Evidence, rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In the instant matter, Plaintiff designated multiple experts in a number of different fields, including three (3) railroad operations experts, two (2) accident reconstructionists, three (3) traffic

---

[1] Counsel for Plaintiff has indicated he will agree to an extension of the expert discovery cut-off, so long as it causes no delay of Defendants' experts' depositions. *See* Aaron B. Markowitz June 15, 2010 letter to Vincent Castillo and Jason Shane, attached as Exhibit N to the Castillo Declaration at p. 3, ¶ 18.

13249-36853 JBS 585721.1                                5                           Case No. 1:08-cv-00856 OWW GSA

**MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER LIMITING THE NUMBER OF PLAINTIFF'S DISCLOSED EXPERTS AND TO EXTEND THE DEADLINE FOR EXPERT DISCOVERY**

LOMBARDI, LOPER & CO NANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612 -3541

engineering experts, and two (2) human factors experts. The testimony of these experts, described above, is duplicative and cumulative of the testimony of the other experts in each respective field. For example, each of Plaintiff's three railroad operations experts – Richard Beall, Charles Culver and James Loumiet – state opinions regarding:

- The Amtrak engineer's operation of the subject train generally;
- The Amtrak engineer's operation of the train's throttle;
- The Amtrak engineer's operation of the train's brakes; and
- The Amtrak engineer's compliance with various operating rules.

Additionally, Plaintiff's two retained human factors experts will both testify regarding Ms. Corral's ability to perceive the Amtrak train in the time prior to the accident. This theme of entirely duplicative and cumulative expert testimony is present throughout Plaintiff's expert reports for each of the above-described areas of specialization.

Furthermore, because Plaintiff's experts are located in nine states from coast-to-coast, counsel for Defendants will need to travel for three straight weeks in order to conduct every expert's deposition. That is, taking these expert depositions will subject Defendants to significant expense because they will conduct multiple depositions of experts covering the same topics. This will be a waste of Defendants' time and resources.

In sum, this Court has the inherent power to limit the number of Plaintiff's expert witnesses, and may do so on the basis that their testimony is duplicative, cumulative, or would cause the parties to waste time and resources in conducting their depositions. Therefore, Defendants request that the Court limit Plaintiff's disclosed experts to one for each discrete specialty.

### IV. WHETHER OR NOT THE COURT LIMITS THE NUMBER OF PLAINTIFF'S EXPERTS, THE PARTIES REQUIRE ADDITIONAL TIME TO COMPLETE EXPERT DEPOSITIONS

Defendants require additional time to conduct the depositions of Plaintiff's disclosed experts. At present, expert discovery closes on July 15, 2010 – forty-four (44) days after the parties served their expert disclosures on June 1, 2010. Due to the vast geographic area in which Plaintiff's experts reside, as well as the sheer number of experts, Defendants cannot complete

expert discovery by July 15, 2010 and therefore request that the Court issue an order extending that deadline.

Defendants received Plaintiff's Designation of Expert Trial Witnesses on June 2, 2010. *See* Plaintiff's Designation of Expert Trial Witnesses, attached as Exhibit A to the Castillo Declaration. As stated above, Plaintiff disclosed eleven (11) experts in nine (9) states – California, Washington, Arizona, Texas, Missouri, Florida, Virginia, Maryland, and Pennsylvania. Also on June 2, 2010, Defendants received the Disclosure of Expert Witnesses of the Plaintiffs in the consolidated matter of *Estate of Bryan Armenta Lopez v. National Railroad Passenger Corporation, et al.*, Case No. 1:08-cv-01496-OWW-GSA, in which the *Lopez* Plaintiffs disclosed two additional experts located in California and Texas. *See Lopez* Plaintiffs' Disclosure of Expert Witnesses, attached as Exhibit J to the Castillo Declaration at p. 3, ¶ 11. That is, <u>the plaintiffs across both matters have disclosed a total of thirteen (13) witnesses in nine (9) states.</u>

Having received these disclosures on June 2, the earliest Defendants could have conducted the first expert deposition, while ensuring adequate notice, would have been June 15, 2010. *Douglas v. Shasta County*, 2010 WL 760643 *2 (E.D. Cal. 2010) [Ten days constitutes reasonable notice of a deposition.] [citing *Paige v. Consumer Programs, Inc.*, 248 F.R.D. 272, 275 (C.D. Cal. 2008) and *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 327 (N.D. Ill. 2005)]. On June 10 and 11, 2010, Defendants' counsel contacted counsel for the *Lopez* Plaintiffs concerning coordinating the depositons. As discussed above, counsel for the *Lopez* Plaintiffs is unavailable from June 21 through 30, 2010, and counsel for the County is unavailable from July 5 through 13, 2010. Yet, Plaintiff Rodriguez noticed the deposition of Defendants' experts Dr. Robert Post, James Flynn, Brian Heikkila and Foster Peterson for June 21, 25, 30 and July 1, respectively. *See* Castillo Declaration at p. 3, ¶¶ 12, 13 and 14. Therefore, in order to complete every deposition of plaintiffs' experts by July 15, 2010, Defendants would have had seven (7) business days to conduct thirteen (13) depositions. This is certainly not feasible.

In addition to the insufficient number of days that are available for Defendants to conduct the depositions of plaintiffs' experts, the experts' geographic locations make it unfeasible to

complete their depositions by the July 15, 2010 deadline. The experts are spread out from coast-to-coast in nine (9) different states. A map showing their locations is attached as Exhibit K to the Castillo Declaration for the Court's ease of reference. Therefore, counsel for Defendants will require not only thirteen separate dates to take every deposition, but will also need extra days to allow for travel. For example, if counsel for Defendants wishes to conduct the depositions of the three experts who reside in the Mid-Atlantic region – Ellie Francis (Pennsylvania), Harvey Levine (Maryland), and Fred Hanscom (Virginia), they will need one day to travel across the country by air, one day for each deposition (assuming counsel must drive between locations after the conclusion of each day's deposition), and one day for return travel to California by air. That is five days to conduct three depositions. The logistics of scheduling these depositions are complicated, and Defendants need additional time to complete them.

Unable to work within the currently set deadline of July 15, 2010, counsel for Defendants noticed the thirteen depositions for the month of July, with the final deposition taking place on July 30, 2010. *See* Castillo Declaration at p. 3, ¶ 16. Counsel for Defendants has also sent a letter to counsel for Plaintiff requesting a telephone conference wherein the parties will stipulate to a schedule for all expert depositions. *See* Vincent Castillo June 15, 2010 letter to Joseph W. Carcione, Jr. and Aaron B. Markowitz, attached as Exhibit M to the Castillo Declaration at p. 3, ¶ 17.

Finally, counsel for Plaintiffs has indicated he will agree to an extension of the expert discovery cut-off, so long as it causes no delay of Defendants' experts' depositions. *See* Aaron B. Markowitz June 15, 2010 letter to Vincent Castillo and Jason Shane, attached as Exhibit N to the Castillo Declaration at p. 3, ¶ 18.

Due to Plaintiffs' experts being located around the country and logistical difficulties in coordinating these depositions, Defendants request that the Court issue an order extending expert discovery in order to allow Defendants to conduct the depositions of plaintiffs' disclosed experts.

## V. **CONCLUSION**

Based on the foregoing, Defendants request that the Court grant the instant motion and issue an order limiting the number of Plaintiff's disclosed experts to one (1) for each discrete

specialty. Additionally, whether or not the Court limits the number of Plaintiff's disclosed experts, Defendants request that the Court issue an order extending the deadline for expert discovery cut-off.

Dated: June 16, 2010               LOMBARDI, LOPER & CONANT, LLP


                                   By: _____/s/ Jason B. Shane_____
                                         JASON B. SHANE
                                       Attorneys for Defendants
                                   NATIONAL RAILROAD PASSENGER
                                   CORPORATION, BNSF RAILWAY COMPANY,
                                   and STATE OF CALIFORNIA, DEPARTMENT
                                           OF TRANSPORTATION

13249-36853 JBS 585721.1                9                Case No. 1:08-cv-00856 OWW GSA

**MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER LIMITING THE NUMBER OF PLAINTIFF'S DISCLOSED EXPERTS AND TO EXTEND THE DEADLINE FOR EXPERT DISCOVERY**