# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCIO CORRAL RODRIGUEZ, individually and as Successor in Interest to the decedents, MARICRUZ CORRAL, IVAN ALEXANDER CORRAL, and LUCIO ANTHONY CORRAL,<br><br>         Plaintiff,<br><br>    v.<br><br>COUNTY OF STANISLAUS; CITY OF MODESTO; CITY OF RIVERBANK; STATE OF CALIFORNIA; AMTRAK CALIFORNIA; BURLINGTON NORTHERN SANTA FE RAILWAY; and DOES 1 to 200,<br><br>         Defendants. | 1:08-cv-00856 OWW GSA<br><br>**ORDER REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF INSPECTION VIDEO, DOCUMENTS RELATING TO DECEDENT'S COLLEGE ATTENDANCE, AND THE DEPOSITION OF THE CUSTODIAN OF RECORDS FOR CPS SECURITY SOLUTIONS, INC.**<br><br>(Document 168) |

On July 15, 2010, Defendants National Railroad Passenger Corporation, BNSF Railway Company and the California Department of Transportation ("Defendants") filed a Motion to Compel Plaintiff Lucio Corral Rodriguez to produce "any and all fruits of his unlawful inspection of the subject railroad crossing," and any and all records regarding decedent Maricruz Corral's attendance at Modesto Junior College. Defendants also seek an order requiring Ana Torres, custodian of records for CPS Security Solutions, Inc., to appear for a deposition and produce all related documents. (Doc. 168.)

1

On July 30, 2010, Plaintiff filed his opposition to Defendants' motion. (Doc. 179.)

On or about August 2, 2010, this Court determined the motion was suitable for decision without oral argument. (*See* Docs. 183-186.)

### DISCUSSION

A.  *Videotape of Site Inspection*

    **1.  Relevant Background**

Defendants assert that on May 19, 2010, about six weeks after the close of non-expert discovery in this matter, a BNSF signal inspector observed a group of people standing "on and around the Claribel Road [railroad] crossing taking measurements and video of the crossing." (Doc. 168 at 3; *see also* Fasching Decl., ¶ 2.) Defendants asserts that BNSF has a right of way at the crossing, and that at least one member of the group was observed to stand between the tracks in the area. (Doc. 168 at 3; *see also* Fasching Decl., ¶ 3.) The BNSF signal inspector asked the group to vacate BNSF property twice, but the group refused, "mistakenly stating that the crossing is public property." Thereafter, the inspector requested the assistance of a special agent from BNSF dispatch. (Doc. 168 at 3; *see also* Fasching Decl., ¶¶ 4-5, 8.)

A senior special agent responded to the area, however, upon his arrival the group was across the street from BNSF property. (Doc. 168 at 3; *see also* Fasching Decl., ¶ 8 & Chiasson Decl., ¶ 4.) The agent "spoke with one person in the group who was evasive," who informed the agent that the group was concerned about vehicles stopping on the crossing. The agent warned the group to keep off BNSF property and the group apparently promised to do so. (Doc. 168 at 3-4; *see also* Fasching Decl., ¶¶ 5-6.)

Counsel for Defendants contacted Plaintiff's counsel upon learning of the aforementioned occurrence, "inquiring about the inspection, demanding production of the videotape, and admonishing Plaintiff and his agents to cease all unauthorized contact with BNSF employees and to remain off BNSF property." (Doc. 168 at 4; *see also* Doc. 172, Exs. A & C.) Because Plaintiff has not provided Defendants with a copy of the videotape, Defendants seek an order compelling same. (Doc. 168 at 4.) Defendants assert that because representatives for Plaintiff "unlawfully trespassed on BNSF's property, taking measurements and video of the subject

2

crossing, BNSF employees, and BNSF vehicles, and communicating with BNSF employees without the presence of BNSF's counsel," this Court should issue an order compelling Plaintiff "to produce any and all fruits of this unlawful inspection of the subject railroad crossing, including, but not limited to, videos, photos and measurements." (Doc. 168 at 6-7.)

In opposition to Defendants' assertions, Plaintiff contends that Defendants have failed to cite to any relevant legal authority, and have failed to reference any law that forbids members of the public from crossing railroad tracks at a public crossing.  Plaintiff contends his experts "never left the public roadway" and "never traveled on BNSF's property other than by way of the public roadway." (Doc. 179 at 3.)

Plaintiff points out that in the May 5, 2010, deposition of John Stilley, BNSF's person most qualified, Mr. Stilley testified that BNSF may have an easement over the roadway in question, but that "the records that exist make it impossible to know for sure." (Doc. 179 at 3 & Ex. 1.)  Nevertheless, contends Plaintiff, the area is a public roadway and thus accessible to Plaintiff's experts.  Morever, because the area inspected is open to the public, Plaintiff contends a notice of inspection was not required.  Finally, Plaintiff offers, "in the spirit of compromise," to provide Defendants with a copy of the inspection videotape "as long as it is ordered by the Court that in doing so Plaintiff is not waiving his work-product." (Doc. 179 at 4.)

**2.  Analysis**

Defendants' motion on this basis is DENIED.  Defendants have failed to provide any legal authority in support of their request for an order compelling production of the videotape from Plaintiff, and neither has the Court identified any such legal authority.  This Court finds Plaintiff's experts could properly inspect the subject area - a public railroad crossing at Claribel Road and Terminal Avenue - without the necessity of a formal notice of inspection.

Rule 34(a) of the Federal Rules of Civil Procedure provides that a party must request "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property . . .."  Here however, the property at issue is commonly known and regularly used as a public roadway, implying the crossing is open to the public.  Additionally, it is not "undisputed," as

Defendants claim, that BNSF's right of way necessitates a formal request for inspection of the area by Plaintiff. Indeed, taking Defendants' assertion that Plaintiff's experts or representatives were trespassing on BNSF property to its logical conclusion, then every car or individual traversing the intersection of Claribel Road and Terminal Avenue would be a trespasser of BNSF property. This argument strains reason and logic. Additionally, this Court interprets Rule 34 of the Federal Rules of Civil Procedure to require requests for inspection in circumstances plainly distinguished from the factual scenario present here. In other words, inspection requests are required on private property or property not open to the public in the same way BNSF's property is used by the public.

The Court also takes note of Defendants' suggestion of impropriety by Plaintiff, where, according to Defendants, Plaintiff or his agents had inappropriate communication with BNSF employees. It is plain that BNSF staff approached Plaintiff's representatives and initiated the conversation that occurred. (*See, e.g.,* Fasching Decl., ¶ 4 ["I rolled down the window of my vehicle, requested that the group vacate BNSF property . . .].) Defendants' suggestion in this regard is not well taken.

In sum, this Court is not persuaded by Defendants' assertion that Plaintiff has acted either criminally, unethically or inappropriately. Defendants' motion to compel production of the videotape of the subject crossing is DENIED.[1]

**B.**    ***Documentation re Maricruz Corral's Attendance at Modesto Junior College***

Defendants assert that despite several requests directed to Plaintiff's counsel, following Plaintiff's deposition wherein he testified his wife was going to attend junior college, they have not received records of Maricruz Corral's attendance at Modesto Junior College. Thus, Defendants seek an order compelling Plaintiff to produce these documents. (Doc. 168 at 4-5, 7.)

In his opposition to Defendants' motion, Plaintiff indicates he has been unable to find any records relevant to Maricruz Corral's attendance at Modesto Junior College, despite his diligent

---

[1] The Court notes that Plaintiff has offered to provide Defendants with a copy of the videotape "as long as it is ordered by the Court that in doing so Plaintiff is not waiving his work-product." (Doc. 179 at 4.) Because this Court has denied the motion, the Court will not order Plaintiff to produce the videotape. Plaintiff is cautioned however that if he intends or attempts to use any evidence from this videotape at the time of trial, he may be precluded from doing so.

efforts. He takes no issue with the college's custodian of records declaration indicating no student records exist as to Ms. Corral. Plaintiff points out that he would have no motivation to hide or fail to produce these documents if in fact they existed, for they would be relevant to the decedent's intent to obtain a college degree and to his claim for damages. Nevertheless, Plaintiff asserts no such documents exist. (Doc. 179 at 4-5.)

In light of the Declaration of the Custodian of Records from Modesto Junior College dated July 16, 2009, wherein it is indicated that there are no academic records relating to Maricruz Corral (Doc. 172, Ex. G), as well as Plaintiff's opposition wherein he indicates neither he nor his attorney have any such relevant documentation, there is absolutely no basis for the Court to issue an order compelling the production of these documents. Defendants' motion is DENIED in this regard.

### C. *Deposition of Ana Torres*

#### 1. **Relevant Background**

On or about October 19, 2009, counsel for Defendants served a subpoena on the Custodian of Records for CPS Security Solutions, Inc. ("CPS"), seeking the production of certain documents after counsel for Defendants observed a mobile surveillance unit ("MSU") near the subject railroad crossing. (Doc. 172, Ex. K.) The MSU was marked as property of CPS. (Doc. 168 at 5.) After CPS produced a Certificate of No Records in response to the subpoena (*see* Doc. 172, Ex. L), defense counsel contacted Ms. Torres, CPS's custodian of records. Thereafter, on or about February 23, 2010, Defendants personally served a deposition subpoena to Ms. Ana Torres, indicating her deposition had been set for March 29, 2010, at 10:00 a.m. in Los Angeles, California. (Doc. 172, Exs. N & O.) Ms. Torres failed to appear for her noticed deposition. (Doc. 168 at 5.) After later advising counsel for Defendants that she believed the subpoena related only to the production of documents, versus her personal appearance, Ms. Torres eventually provided defense counsel with a copy of an agreement pertaining to the MSU in question, identifying the contracting party as Steve Rank of Ranks Investigations. (Doc. 168 at 5-6 & Doc. 172, Ex. P.)

Defendants contend Ms. Torres should be compelled to appear for a deposition in Oakland, California, and to produce responsive documents. (Doc. 168 at 7-8.)

Plaintiff's opposition notes that Ms. Torres is a third party, rather than a party to this action. Thus, Plaintiff's counsel does not represent Ms. Torres. Moreover, Plaintiff notes that where Defendants seek a court order compelling Ms. Torres' attendance at a deposition, Defendants failed to serve Ms. Torres or CPS with their motion. Further, Plaintiff indicates that while he has no objection to the taking of Ms. Torres' deposition, such a deposition at this late date will only serve to delay the trial. Finally, Plaintiff believes the subsequent delay by Defendants - after noticing Ms. Torres deposition for March 2010, then waiting some four months to take action regarding her failure to comply with the subpoena - is evidence that Defendants' motion is merely an effort to delay matters, harass Plaintiff and drive up the costs of this litigation. (Doc. 179 at 2-3, 5.)

**2.  Legal Standard**

A subpoena shall "command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person." F. R. Civ. P. 45 (a)(1)(iii). The issuing court may hold a person in contempt for failing to obey a subpoena. F. R. Civ. P. 45(e). "Even though subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court." *Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 455 (D. Md. 2001) (citing Advisory Committee Notes to Rule 45(a) 1991 amend. ["Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act of defiance of a court order and exposes the defiant witness to contempt sanctions"]); *Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813, *7 (E.D. Mich. Dec. 10, 2008) (same).

A civil contempt sanction is designed to force the contemnors to comply with an order of the court and thus to affect discovery. *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 207 (1999). Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. Courts have

1  inherent power to enforce their orders through civil contempt. *See Spallone v. United States*, 493
2  U.S. 265, 276 (1990), citing *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16
3  L.Ed.2d 622 (1966). Civil contempt is characterized by the court's desire to compel obedience
4  with a court order, or to compensate the contemnor's adversary for the injuries which result from
5  the non-compliance. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F. 2d 778 (9th Cir.
6  1983). A district court has wide latitude in determining whether there has been a contemptuous
7  defiance of one of its orders. *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992).
8       Failure of the responding party to file a responsive pleading to an order to show cause
9  ("OSC") why a contempt citation should not issue may warrant a finding that the applicant's
10 allegations are uncontested as a matter of law. *See Rogers v. Webster*, 776 F.2d 607, 611 (9th Cir.
11 1985). The responding party is entitled to a hearing on the OSC where, unless waived, live
12 testimony must be taken or an opportunity afforded to cross examine the declarants. *See*
13 *Pennwalt Corp. v. Durand-Wayland, Inc.,* 708 F.2d 492, 495 (9th Cir. 1983). However, where the
14 affidavits offered in support of a finding of contempt are uncontroverted, a full evidentiary
15 hearing is not essential to due process and the trial court may treat the facts set forth in the
16 uncontroverted affidavits as true. *See Peterson v. Highland Music*, 140 F.3d 1313, 1324 (9th Cir.
17 1998). Without an issue of material fact, the district court is only required to give notice and an
18 opportunity to be heard. *See United States v. Ayres*, 166 F.3d 991, 996 (9th Cir. 1999).
19      "The standard for finding a party in civil contempt is well settled: The moving party has
20 the burden of showing by clear and convincing evidence that the contemnors violated a specific
21 and definite order of the court." *FTC v. Affordable Media*, 179 F. 3d 1228, 1239 (9th Cir. 1999).
22 Once the moving party meets this standard, the burden shifts to the contemnor to demonstrate that
23 he or she took every reasonable step to comply, and to articulate reasons why compliance was not
24 possible. *See Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). To assess whether an
25 alleged contemnor has taken "every reasonable step" to comply with the terms of a court order,
26 the district court can consider (1) a history of noncompliance, and (2) a failure to comply despite
27 the pendency of a contempt motion. *See Stone v. City and County of San Francisco*, 968 F.2d at
28 856-57. A party's subjective intent and willfulness is irrelevant. *See McComb v. Jacksonville*

*Paper Co.*, 336 U.S. 187, 191 (1949); *Donovan v. Mazzola*, 716 F.2d at 1240. Thus, the disobedient party's good faith or intent in attempting to comply does not bar a finding of contempt. *Stone v. City and County of San Francisco*, 968 F.2d at 857. If, however, "a defendant's action 'appears to be based on a good faith and reasonable interpretation of (the court's order),' he should not be held in contempt." *Vertex Distributing v. Falcon Foam Plastics*, 689 F.2d at 889, quoting *Rinehart v. Brewer*, 483 F.Supp. 165, 171 (S.D. Iowa 1980).

Sanctions for civil contempt are imposed to coerce compliance with a court order, to compensate the party pursuing contempt for injuries resulting from the contemptuous behavior, or both. *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947). "Generally, the minimum sanction necessary to obtain compliance is to be imposed." *Whittaker Corp v. Execuair Corp.*, 953 F. 2d 510, 517 (9th Cir. 1992), citing *Spallone v. United States*, 493 U.S. at 280. Where the purpose of the contempt order is to ensure a party's compliance, the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Bademyan v. Receivable Management Services Corporation*, No. CV-08-00519, 2009 WL 605789 (C.D. Cal. March 9, 2009), citing *Whittaker Corp v. Execuair Corp.*, 953 F.2d at 516.

### 2. Analysis

Here, Defendants have failed to employ the appropriate mechanism within which to compel Ms. Torres' deposition. Because Ms. Torres is a non-party to this action, Defendants should have filed an application for an order to show cause why sanctions should not be imposed for Ms. Torres' failure to appear at the deposition. *See* F. R. Civ. P. 45(e). Instead, Defendants have filed the instant motion, asking this Court for an order compelling Ms. Torres to attend a deposition. Defendants' request is legally insufficient. Ms. Torres has never been served with Defendants' motion and thus has been denied any opportunity to respond to Defendants' motion, even assuming arguendo it was proper in the first instance.

Accordingly, because Defendants have failed to employ the proper procedural mechanism to force Ms. Torres' compliance with the deposition subpoena, the motion is DENIED.

**D.    *Sanctions***

Defendants seek an order of this Court requiring Plaintiff to pay $3,651.30 for their attorney's fees and costs, as prevailing party on a motion to compel. F. R. Civ. P. 37(a)(5). Defendants contend they "are entitled to recover this amount due to the egregious nature of Plaintiff's attorneys and consultants unlawful site inspection and unreasonable delay in producing documents related to Modesto Junior College." (Doc. 168 at 8-9.)

In response to Defendants' request for sanctions, Plaintiff argues it should not be ordered to pay sanctions for Plaintiff has acted appropriately and ethically. Further, Plaintiff asserts that Defendants' own conduct warrants an award of sanctions in Plaintiff's favor because the only purpose behind Defendants' instant motion is to cause delay, harass Plaintiff and increase the costs of litigation. (Doc. 179 at 3, 5.)

Because Defendants have not prevailed for the foregoing reasons, sanctions are not warranted against Plaintiff. Therefore, Defendants' motion is DENIED.

With regard to Plaintiff's request for sanctions against Defendants, Rule 37(a)(5)(B) provides as follows:

> *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Here, the Court has denied Defendants' motion is its entirety. Thus, Plaintiff is entitled to an award of its reasonable expenses, including attorney's fees, unless Defendants' motion was substantially justified or other circumstances make such an award unjust. The phrase "substantially justified" does not mean "'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or 'if reasonable people could differ as to [the] appropriateness of the contested action].'" *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988), brackets in original; citations deleted. For the reasons stated above, this Court finds Defendants' motion was not substantially justified, nor would any other

circumstance make an award of Plaintiff's expenses unjust.  Thus, Plaintiff's request for sanctions against Defendants is GRANTED.

**CONCLUSION**

Based upon the foregoing, it is HEREBY ORDERED that:

1. Defendants' motion to compel production of the site inspection videotape, taken in the area of Claribel Road and Terminal Avenue, is DENIED;

2. Defendants' motion to compel production of the records of decedent Maricruz Corral's attendance at Modesto Junior College is DENIED;

3. Defendants' motion seeking an order of this Court to compel the attendance of third or non party Ana Torres at a deposition is DENIED;

4. Relatedly, Defendants' request for sanctions against Defendants is DENIED; and

5. Plaintiff's request for sanctions in the form of his reasonable costs associated with opposing Defendants' motion is GRANTED.  Plaintiff shall submit a declaration evidencing his reasonable attorney fees and costs associated with opposing the instant motion within fourteen (14) days of this order.  Defendants shall file any objections to the Plaintiff's proposed amount within fourteen (14) days of the date of the filing of Plaintiff's evidence.

IT IS SO ORDERED.

Dated:   **September 16, 2010**              /s/ **Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE

10