UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCIO CORRAL RODRIGUEZ, individually and as Successor in Interest to the decedents, MARICRUZ CORRAL, IVAN ALEXANDER CORRAL, and LUCIO ANTHONY CORRAL,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>COUNTY OF STANISLAUS; CITY OF MODESTO; CITY OF RIVERBANK; STATE OF CALIFORNIA, AMTRAK CALIFORNIA; BURLINGTON NORTHERN SANTA FE RAILWAY; and DOES 1 to 200,<br><br>　　　　Defendants. | 1:08-cv-00856 OWW GSA<br><br>MEMORANDUM DECISION AND ORDER RE POST-TRIAL MOTIONS.<br><br>(DOC. 452, 454) |

I.    <u>INTRODUCTION</u>

This case arises from a collision between a train operated by National Railroad Passenger Corporation ("Amtrak") and a vehicle driven by Lucio Corral Rodriguez's ("Plaintiff") wife, Maricruz Corral, resulting in the death of Maricruz Corral and Plaintiff's two children (together, "Decedents"). Plaintiff sued several defendants, including Amtrak, Burlington Northern Santa Fe Railway ("BNSF"), and the State of California, Department of Transportation (together, "Defendants").

Before the court for decision are post-trial motions. Plaintiff moves for (1) entry of judgment against Amtrak and the State of California and (2) accrual of interest from the date of

1

1
2
3
4
5
6
7
8
9

filing of the jury's original verdict. (Doc. 452). Defendants filed an opposition seeking a setoff and sanctions (Doc. 453), to which Plaintiff replied (Doc. 456). Defendants also move for judgment as a matter of law regarding punitive damages (Doc. 454), which Plaintiff opposed (Doc. 455). A hearing on the motions was held May 23, 2011. The parties submitted supplemental briefs on the issue of pre and post judgment interest. Docs. 464, 465.

10

## II.   BACKGROUND

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

On December 8, 2010, a twelve-day jury trial began. On the second day of trial, the County of Stanislaus settled its case with Plaintiff for $800,000. The trial culminated with a unanimous jury verdict on January 14, 2011. The jury made findings that: (1) Amtrak was negligent in operating the train; (2) Amtrak's negligence caused Plaintiff's harm; (3) Burlington Northern and Santa Fe Railway were not negligent in the maintenance and/or use of its property; and (4) Maricruz Corral was 50% at fault. The jury awarded Plaintiff the following damages for Amtrak's negligence: (1) $431,359 for economic damages Decedents would have contributed in lifetime financial support; (2) $432,000 for the reasonable value of household services Decedents would have provided; and (3) $3,000,000 in non-economic damages.

27
28

III. <u>DISCUSSION</u>

A.   <u>Plaintiff's Motion for Proposed Judgment</u>

   1.   <u>Amount of Judgment</u>

Plaintiff moves for entry of judgment in his favor in the
amount of $1,931,694.50, which represents the jury's total damage
award of $3,863,389, reduced by 50% (the percentage of Marricruz
Corral's comparative fault). Amtrak argues that, pursuant to
California Code of Civil Procedure § 877, the damage award should
be reduced by the full amount of the County of Stanislaus'
$800,000 settlement.

California Code of Civil Procedure § 877 imposes joint and
several liability on joint tortfeasors. Section 877 states in
relevant part:

> Where a release, dismissal with or without prejudice, or a
> covenant not to sue or not to enforce judgment is given in
> good faith before verdict or judgment to one or more of a
> number of tortfeasors claimed to be liable for the same
> tort, or to one or more other co-obligors mutually subject
> to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any other such party from
> liability unless its terms so provide, _**but it shall reduce
> the claims against the others in the amount stipulated by
> the release**_, the dismissal or the covenant, or in the amount
> of the consideration paid for it whichever is the greater.

Cal. Code Civ. P. § 877 (emphasis added). Amtrak asks the court
to apply Section 877(a) to reduce the judgment by the full amount
of the County of Stanislaus' $800,000 settlement.

The Fair Responsibility Act of 1986, enacted by Proposition
51 and codified in California Civil Code § 1431.2, provides in

3

1  pertinent part:

2
3
4
5
6
7

> In any action for personal injury, property damage, or
> wrongful death, based upon principles of comparative fault,
> the liability of each defendant for non-economic damages
> shall be several only and shall not be joint. Each defendant
> shall be liable only for the amount of non-economic damages
> allocated to that defendant in direct proportion to that
> defendant's percentage of fault, and a separate judgment
> shall be rendered against that defendant for that amount.

8  Cal. Civ. Code § 1431.2(a). California appellate courts have held

9  that Section 1431.2(a) eliminated joint and several liability for

10  noneconomic damages but retained it for economic damages. *See*

11  *e.g., Espinoza v. Machonga,* 9 Cal.App.4th 268, 272, 11 Cal.Rptr.2d

12  498 (1992) ("Under subdivision (a) of Civil Code section 1431.2,

13  a personal injury defendant is no longer liable for any amount of

14  the plaintiff's noneconomic damages which exceeds the percentage

15  of those noneconomic damages attributable to that defendant.");

16  *Hoch v. Allied-Signal, Inc.,* 24 Cal.App.4th 48, 63-65, 29

17  Cal.Rptr.2d 615 (1994).

18
19      Amtrak acknowledges that California appellate courts and

20  commentators have not interpreted California Code of Civil

21  Procedure § 877 to require set-off of noneconomic damages after

22  enactment of Section 1431.2(a) and that the California Supreme

23  Court has not opined on the matter. Amtrak contends that the

24  California appellate court decisions should be ignored and

25  instead the court should apply Justice Croskey's concurring

26  opinion in *Bostick v. Flex Equipment Co., Inc.,* 147 Cal.App.4th

27

28
                                  4

1  80, 54 Cal.Rptr.3d 28 (2007):

2
3          I conclude further that despite the application of
           Proposition 51, the setoff required by Code of Civil
4          Procedure section 877 (section 877) for a good faith
           settlement applies to both economic and noneconomic damages,
5          contrary to *Espinoza v. Machonga* (1992) 9 Cal.App.4th 268,
           11 Cal.Rptr.2d 498 ( Espinoza ), *Hoch v. Allied-Signal, Inc.*
6          (1994) 24 Cal.App.4th 48, 29 Cal.Rptr.2d 615 (Hoch), and
           their progeny. In my view, both the language of section 877
7          and the purposes of the statute compel the conclusion that
           section 877 requires a setoff of the noneconomic portion of
8          a good faith settlement to the extent necessary to avoid a
           double recovery by the plaintiff. I suggest a formula to
9          reduce the plaintiff's claims against nonsettling defendants
           in accordance with section 877 and determine the amounts of
10         economic and noneconomic damages to award the plaintiff in
           an action subject to Proposition 51.

11

12 *Id.* at 100. Amtrak asks that the court predict that the

13 California Supreme Court, if confronted with the setoff issue,

14 would follow Justice Croskey's concurrence and reject the

15 numerous appellate court decisions that hold to the contrary. In

16 essence, Amtrak seeks to rewrite California Civil Code Section §

17 1431.2 and violate the law of precedent that a federal trial

18 court is bound by the decision of an intermediate state court

19 applying state law if the state Supreme Court has not decided the

20 issue. *See Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982)

21 ("Under the Erie doctrine, a federal court sitting in diversity

22 is not free to reject a state judicial rule of law merely because

23 it has not received the sanction of the state's highest court,

24 but it must ascertain from all available data what the state law

25 is and apply it.").

26

27

28

1   Applying *Espinoza*, the setoff attributable to economic

2   damages is calculated by first determining the percentage of

3   Plaintiff's damage award attributable to economic damages, or

4   22.347% ($863,359 divided by $3,863,359). *See Espinoza*, 9

5   Cal.App.4[th] at 276-77. This percentage is applied to the

6   settlement amount to determine the portion of the settlement

7   amount attributable to economic damages, or $178,778.93 ($800,000

8   x 22.347%). *See id.* Plaintiff's judgment against Amtrak is

9   reduced by $178,778.93.

10   Amtrak's liability to Plaintiff is computed as follows:

| $   863,359.00 | Total economic damages |
|---|---|
| - $   431,679.50 | Reduction of economic damages by Maricruz Corral's 50% fault |
| - $   178,778.93 | Reduction of economic damages by economic portion of County of Stanislaus settlement |
| $3,000,000.00 | Total noneconomic damages |
| - $1,500,000.00 | Reduction of noneconomic damages by Maricruz Corral's 50% fault |
| $1,752,900.57 | Amtrak's liability to Plaintiff |

18   *See id.*

19   Plaintiff's motion for entry of judgment as to the amount of

20   liability and damages is GRANTED. Judgment will be entered for

21   Plaintiff in the amount of $1,752,900.57 ($252,900.57 for

22   economic damages and $1,500,000.00 for non-economic damages).

23

24   **2.   <u>Liability of Amtrak</u>**

25   Plaintiff asks the court to enter judgment against Amtrak.

26   The jury found that Amtrak was negligent in operating the train

27   and Amtrak's negligence caused Plaintiff's harm. Amtrak does not

28

6

1  address its liability in its opposition.

2      Plaintiff's motion for entry of judgment as to Amtrak's

3  liability is GRANTED.

4          3.   Liability of State of California

5      Plaintiff moves for entry of judgment against the State of

6  California as the owner of the subject train. Plaintiff contends

7  that California Vehicle Code §§ 17150 and 17002 impose derivative

8  liability on the State of California for injuries caused by its

9  train. California Vehicle Code § 17150 provides:

10

11      Every owner of a motor vehicle is liable and responsible for
        death or injury to person or property resulting from a
12      negligent or wrongful act or omission in the operation of
        the motor vehicle, in the business of the owner or
13      otherwise, by any person using or operating the same with
        the permission, express or implied, of the owner.
14

15  Cal. Vehicle Code § 17150. California Vehicle Code § 17002 makes

16  public entities liable under California Vehicle Code § 17150.

17  Cal. Vehicle Code § 17002.

18

19      Amtrak argues that the State of California is not

20  vicariously liable under California Vehicle Code § 17150 because

21  a train is not a vehicle under California Vehicle Code § 670.

22  Amtrak further contends that federal law explicitly exempts

23  trains from the definition of "motor vehicle." *See* 49 U.S.C.A. §

24  32101(7) ("'motor vehicle' means a vehicle driven or drawn by

25  mechanical power and manufactured primarily for use on public

26  streets, roads, and highways, but does not include a vehicle

27  operated only on a rail line."); *see also* 49 U.S.C.A. § 30301(4)

28

7

1
2
3
4
5
6
("'motor vehicle' means a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on public streets, roads, or highways, but does not include a vehicle operated only on a rail line."). Plaintiff rejoins that a train is a motor vehicle under California Vehicle Code § 415.

7
California Vehicle Code § 670 provides that:

8
9
10
> A "vehicle" is a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved exclusively by human power or used exclusively upon stationary rails or tracks.

11
12
13
14
Cal. Vehicle Code § 670. Section 670 explicitly excludes trains from the definition of "vehicle" by excepting any device "used exclusively upon stationary rails or tracks." *See id.* Section 415 of California Vehicle Code defines "motor vehicle" as:

15
16
(a) A "motor vehicle" is a vehicle that is self-propelled.

17
18
(b) "Motor vehicle" does not include a self-propelled wheelchair, motorized tricycle, or motorized quadricycle, if operated by a person who, by reason of physical disability, is otherwise unable to move about as a pedestrian.

19
Cal. Vehicle Code § 415.

20
21
22
23
24
25
26
27
Citing *Donahue Construction Company v. Transportation Indemnity Company*, 7 Cal.App.3d 291, 86 Cal.Rptr. 632 (1970), Plaintiff contends that certain sections of the California Vehicle Code apply to "vehicle," while others apply to "motor vehicle." The *Donahue* court, however, applied both the definitions of "vehicle" in Section 670 and "motor vehicle" in Section 415, holding that the provisions of the California

28

Vehicle Code defining "vehicle" and "motor vehicle" must be considered part of every policy of liability insurance. *Id.* at 300.

The definition of "motor vehicle" in Section 415 incorporates the definition of "vehicle" in Section 670, which explicitly excludes trains. *See* Cal. Vehicle Code § 415 (defining a "motor vehicle" as a *vehicle* that is self-propelled) (emphasis added). California Vehicle Code § 17150 does not apply to owners of trains.

Amtrak further argues that there is no evidence of an independent basis of liability as to the State of California. Plaintiff's counsel conceded its direct liability claims against the State of California.

Plaintiff's motion for judgment against the State of California is DENIED, as it is not supported by the law and has been conceded by Plaintiff.

### 4. Amtrak's Request for Sanctions

Amtrak requests sanctions against Plaintiff's counsel for its motion for judgment against the State of California. Amtrak contends that Plaintiff's motion misrepresents the law by failing to inform the court and Defendant of California Vehicle Code § 670, which explicitly excepts trains. Plaintiff rejoins that its motion was supported and Amtrak misquoted the California Vehicle Code.

9

1   Rule 11(c) permits the court to impose sanctions on any

2   attorney or law firm for violating Rule 11(b), which provides:

3

4       By presenting to the court a pleading, written motion, or
        other paper--whether by signing, filing, submitting, or
5       later advocating it--an attorney or unrepresented party
        certifies that to the best of the person's knowledge,
6       information, and belief, formed after an inquiry reasonable
        under the circumstances: . . .
7

8       (2) the claims, defenses, and other legal contentions are
        warranted by existing law or by a nonfrivolous argument for
9       extending, modifying, or reversing existing law or for
        establishing new law.
10

11  Fed. R. Civ. P. 11. Sanctions under Rule 11 are mandatory. *Golden*

12  *Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (9th

13  Cir. 1986).

14      Here, Plaintiff's argument regarding the State of

15  California's liability under the California Vehicle Code was

16  incorrect. Rule 11 permits sanctions only when the "pleading,

17  motion, or other paper" is frivolous, not when one argument is

18  frivolous. *Id*. "Nothing in the language of the Rule or the

19  Advisory Committee Notes supports the view that the Rule empowers

20  the district court to impose sanctions on lawyers simply because

21  a particular argument or ground for relief contained in a non-

22  frivolous motion is found by the district court to be

23  unjustified." *Id.* at 1541.

24

25      Rule 11 also includes a mandatory safe harbor provision that

26  requires the party claiming sanctions to notify the nonmoving

27  party of the motion for sanctions and request correction. Fed. R.

28

10

1  Civ. P. 11(c)(2); *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir.

2  2005). "The movant serves the allegedly offending party with a

3  filing-ready motion as notice that it plans to seek sanctions.

4  After 21 days, if the offending party has not withdrawn the

5  filing, the movant may file the Rule 11 motion with the court."

6  *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1151

7  (9th Cir. 2002). The safe harbor provision is enforced strictly.

8  *Holgate*, 425 F.3d at 678. Defendant did not comply with Rule 11's

9  mandatory safe harbor requirement.

10      Defendant's request for sanctions is DENIED.

11          5.   <u>Interest</u>

12              a)   <u>Pre-Judgment Interest</u>

13      Plaintiff moves for pre-judgment interest from January 14,

14  2010, the date the original verdict was filed.

15      In cases that arise under federal law, pre-judgment interest

16  is determined by federal law. *United States v. Pend Oreille*

17  *Public Utility Dist. No. 1*, 28 F.3d 1544, 1553 (9th Cir. 1994).

18  *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45

19  F.3d 288, 291 (9th Cir. 1995). In diversity cases, pre-judgment

20  interest is calculated at the state law rate. *James B. Lansing*

21  *Sound, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 801

22  F .2d 1560, 1569 (9th Cir.1986). This case was removed from state

23  court to a federal district court on the basis of federal

24  question jurisdiction under 28 U.S.C. § 1349 because Amtrak was

25  incorporated by an Act of Congress and the United States owns

                                11

over 50% of Amtrak's capital stock. Doc. 1, ¶ 4; Doc. 44, 12. "It is well settled that prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism." *Sea Hawk Seafoods v. Exxon Corp.*, 484 F.3d 1098, 1101 (9th Cir. 2007). Because Plaintiff's claims are state law claims, Plaintiff and Defendants do not contest that state law controls the award of prejudgment interest. *See id.*

Plaintiff contends, without citing authority, that prejudgment interest is discretionary and should be awarded based on the equities of the case.

California Civil Code § 3288 provides that: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." Cal. Civ. Code § 3288. Here, the jury did not award Plaintiff interest.

California Civil Code § 3291 provides:

> In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent of the other person, corporation, association, or partnership, and whether the injury was fatal or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section.

> If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code

of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment.

Cal. Civ. Code § 3291. Defendants argue that Plaintiff does not contend — nor can he contend — that Plaintiff made a settlement offer to Defendants. Without a settlement offer, Section 3291 does not apply.

California Civil Code Section 3287(a) provides:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

Under section 3287(a), prejudgment interest is available when "defendant actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount." *Cassinos v. Union Oil. Co.*, 14 Cal. App. 4th 1770, 1789 (1993). "Damages are deemed certain or capable of being made certain within the provisions of [§ 3287(a)] where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *Fireman's Fund Ins. Co. v. Allstate Ins. Co.*, 234 Cal.App.3d 1154, 1173 (1991). Section 3287(a) does not authorize pre-judgment interest where the amount of damages "depends upon a

judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor." *Id.; Highlands Ins. Co. v. Cont'l Cas. Co.*, 64 F.3d 514, 521 (9th Cir. 1995). Here, the damages were dependent on a judicial determination; Section 3287(a) does not authorize pre-judgment interest.

California Civil Code Section 3287(b) provides:

> Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

Cal. Civ. Code § 3287(b). Here, Plaintiff's claims are not based in contract.

There is no basis to grant Plaintiff's request for prejudgment interest. Plaintiff's motion for pre-judgment interest is DENIED.

b)   <u>Post-Judgment Interest</u>

Post-judgment interest is mandatory under 28 U.S.C. § 1961. *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986). 28 U.S.C. § 1961 provides in pertinent part:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. . . .
>
> (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and

14

section 1304(b) of title 31, and shall be compounded annually.

28 U.S.C. § 1961. Interest shall accrue from the date of entry of judgment, in accordance with the rate and computation set forth in 28 U.S.C. § 1961.

Plaintiff's motion for post-judgment interest is GRANTED, commencing with the date of entry of judgment on the jury's verdict under Federal Rule of Civil Procedure § 54.

**B.     Amtrak's Renewed Motion for Judgment as a Matter of Law as to Punitive Damages**

Amtrak renews its motion for judgment as a matter of law as to punitive damages pursuant to Federal Rule of Civil Procedure 50(b) (Doc. 454), which Plaintiff opposes (Doc. 455).

**1.     Legal Standard**

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law in jury trials, and "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" *Weisgram v. Marley Co.*, 528 U.S. 440, 447-48 (2000).

Rule 50(a) provides in pertinent part:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). A Rule 50(b) motion for judgment as a matter of law is a renewed Rule 50(a) motion. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). The Ninth Circuit has stated the standard for judgment as a matter of law:

> When confronted with a motion for judgment as a matter of law, whether at the end of a plaintiff's case or at the close of all the evidence, a trial court must scrutinize the proof and the inferences reasonably to be drawn therefrom in the light most amiable to the nonmovant . . . In the process, the court may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of evidence . . . A judgment as a matter of law may be granted only if the evidence, viewed from the perspective most favorable to the nonmovant, is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ as to the outcome.

*Gibson v. City of Cranston*, 37 F.3d 731, 735 (9th Cir. 1994) (citations omitted).

"A jury's inability to reach a verdict does not necessarily preclude a judgment as a matter of law." *Headwaters Forest Defense v. Cnty. of Humboldt*, 240 F.3d 1185, 1197 (9th Cir. 2000), *vacated on other grounds*, 122 S.Ct. 24 (2001). The same standard applies to a motion for judgment as a matter of law made after a mistrial because of jury deadlock. *See id.* at 1197 n.4 ("The fact that the motion was granted after a mistrial was declared because of jury deadlock does not alter the standard to be applied on appeal.")

> 2.   Discussion

California Civil Code §3294(a) allows a plaintiff to recover punitive damages in a tort action only "where it is proven by

clear and convincing evidence that the defendant has been
guilty of oppression, fraud, or malice . . . ." Cal. Civ. Code
§3294(a). Plaintiff's claim against Amtrak is based solely on
allegations of "malice," which is defined as "conduct which is
intended by the defendant to cause injury to the plaintiff or
despicable conduct which is carried on by the defendant with a
willful and conscious disregard of the rights or safety of
others." Cal. Civ. Code §3294(c)(1).

       Before the trial, Amtrak filed a Rule 50(a) motion for
judgment as a matter of law on the issue of punitive damages
(Doc. 428), which Plaintiff opposed (Doc. 435). Amtrak's motion
was denied orally on January 11, 2011. The court explained:

> And it is the evidence in the case that if the jury were to
> find that pursuant to a rule and policy of the railroad,
> that objects and/or persons on the track are trespassers and
> that the sole duty of the railroad is to sound a warning on
> the horn and take no other action, including braking of any
> kind or stopping, and that a dispute in the evidence as to
> whether Engineer Cone accelerated the pace of his train as
> approached the crossing.
>
> From that it could be inferred, because there's a conflict
> as to what he knew, what he observed and what his experience
> taught him to do, that he simply ignored the risk. Having
> seen movement by the vehicle, where it was at least
> potentially interpretable by a reasonable engineer that,
> from being on the tracks to backing up and then to moving
> forward slightly, that is erratic and unusual enough action
> that it could be argued that that put the engineer on notice
> there's something going on up here. It doesn't look like
> anything that I've seen or it looks sufficiently
> unpredictable that I had better proceed with caution. And
> instead, if the jury were to believe that he increased the
> pace of the locomotive, that would be sufficient factual
> support for a finding of conscious disregard.

17

And so I am going to deny the motion for judgment as a matter of law.

Draft Trial Transcript, January 11, 2011, 112. Amtrak's renewed motion for judgment as a matter of law does not alter the previous conclusion that, drawing all inferences in Plaintiff's favor, the evidence is not so one-sided that Amtrak is plainly entitled to judgment as a matter of law. The previous ruling remains unchanged.

Defendant's renewed motion for judgment as a matter of law as to punitive damages is DENIED.

## IV.   CONCLUSION

For the reasons stated:

1. Plaintiff's motion for proposed judgment is GRANTED in part and DENIED in part.

2. Defendant's renewed motion for judgment as a matter of law as to punitive damages is DENIED.

3. Plaintiff shall submit a proposed form of order consistent with this memorandum decision within five (5) days following electronic service of this memorandum decision.

SO ORDERED.

DATED: July 5, 2011

                                    /s/ Oliver W. Wanger
                                   Oliver W. Wanger
                           United States District Judge